UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

H'WE HOOD,

                              Plaintiff,

v.                                                          Case No. 5:09-cv-79-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                              Defendant.
_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

In November 2005, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of February 8, 2005. (R. 68-70.) Plaintiff's application was denied initially and upon reconsideration. (R. 28-29, 34-35, 46-47, 49-51.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 45.) The ALJ conducted Plaintiff's administrative hearing on May 23, 2008. (R. 573-83.) The ALJ issued a decision unfavorable to Plaintiff on August 22, 2008. (R. 9-20.) Plaintiff's request for review of the hearing decision by the Social

Security Administration's Office of Hearings and Appeals was denied. (R. 4-6.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11] Fourth, if a claimant's impairments do

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996,
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was fifty three (53) years old at the time of the ALJ's decision on August 22, 2008. (R. 20, 68.) She was born in Vietnam, where she attended high school. (R. 582.) She also has some training as a registered nurse. (R. 78.) Plaintiff has been employed in the United States since 1990 and has previous work experience as a factory worker. (R. 75.) Plaintiff contends that she has been unable to work since February 8, 2005 due to bilateral carpal tunnel syndrome, and pain in her back,

---

[17](...continued)
1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

shoulders, and knees. (R. 68, 74, 577.) Plaintiff is insured for benefits through December 31, 2010. (R. 59.)

In the ALJ's review of the record, including Plaintiff's testimony, and medical records from several health care providers, the ALJ determined that Plaintiff suffers from degenerative joint disease of the knee, cervical and lumbar strains, left shoulder impingement, and status post excision of left wrist pisiform. (R. 14.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 15-17.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of light work. (R. 20.) The ALJ limited Plaintiff to lifting twenty pounds occasionally, and ten pounds frequently; sitting, standing, and/or walking for about six hours in an eight hour work day; and occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 17.) After finding that Plaintiff could not perform her past relevant work as a factory worker, the ALJ applied the Medical-Vocational Guidelines (the "grids")[22] and found that Rule 202.13 directed a finding that Plaintiff was not disabled. (R. 19-20.)  It is the ALJ's application of Rule 202.13 that is the subject of Plaintiff's appeal.

Plaintiff does not challenge the ALJ's assessment of her medical impairments. Plaintiff raises only one issue on appeal and argues that the ALJ improperly considered

---

[22] 20 C.F.R. § 404, subpt. P, app. 2.

6

her education and ability to communicate in English when applying the grids at step five of the sequential analysis. The Court will limit its discussion of the evidence accordingly.

Plaintiff completed high school in Vietnam and has been employed in the United States since 1990. (R. 63-67, 582.) Plaintiff attended some vocational schooling to become a registered nurse in 1994. (R. 78-79.)

In December 2005, a Social Security Administration case worker met face to face with Plaintiff and observed that Plaintiff did not appear to have any difficulty with reading, understanding, coherency, talking, answering, or writing. (R. 105.)

In Plaintiff's written communication with the Social Security Administration during her initial application for benefits, Plaintiff represented that she could understand, speak, read, and write (more than just her name) in the English language and that she did not need assistance from an interpreter. (R. 73-74.) There is no indication that this form was completed by someone other than Plaintiff. Plaintiff did not, however, complete a disability report on appeal as evidenced by the fact that Plaintiff's husband, Steven Hood, wrote his name in the box labeled "Name of person completing this form." (R. 89.) In addition, the handwriting on the form was substantially different from the handwriting on other correspondence with the Social Security Administration signed by Plaintiff. For example, among the several pages of Plaintiff's correspondence with the Social Security Administration, there is a handwritten note (written in the first person) describing the current status of Plaintiff's medical conditions and it is purportedly signed by Plaintiff. (R. 111.)

The medical evidence of record reflects that Plaintiff has sought medical treatment from several different health care providers in the United States over the course of several years. All of the medical reports are written in English and there is no evidence that Plaintiff was communicating with her treating physicians in any language other than English when she reported her subjective symptoms and complaints. Indeed, within Plaintiff's medical records from the VA Medical Center, there are several references to Plaintiff being capable of understanding and following instructions given in the English language. Plaintiff gave informed consent for multiple medical procedures. Each time Plaintiff was prescribed a new medication, she advised that she understood the physician's instructions concerning the medication. In addition, the VA routinely conducted "learning assessments" in which Plaintiff was found to be the "primary learner" with an understanding of the English language[23] and no observed "learning barriers." (R. 249-50, 265, 272, 296-97, 371-72, 427, 434, 448, 466, 500-01, 507, 509, 513, 520.)

Plaintiff's medical records demonstrate that she was able to communicate effectively with her treating physicians. For example, treatment notes document her subjective symptoms and complaints. In February 2005, Plaintiff filled out (and signed) a patient questionnaire regarding her personal medical history for her physical therapist. (R. 159.) In addition, Plaintiff actively participated in numerous physical therapy

---

[23] The treatment notes consistently refer to Plaintiff's "primary language" as being "English" but occasionally list her primary language as "other." In either case, all treatment notes conclude that Plaintiff is fully capable of learning in English.

sessions in which she was instructed (in English) how to do various exercises. These instructions were apparently given to her both orally and in writing.[24]

In January 2007, Plaintiff presented to Dr. Lawrence Field for a consultative examination at the request of the Social Security Administration. As part of his assessment of Plaintiff, Dr. Field did not review any of Plaintiff's existing medical records. His report was based solely on his examination of her during a single office visit. In the "Social History" portion of his consultative report, Dr. Field noted that Plaintiff "has a 12th grade education in Viet Nam and is only able to understand 20% of the English language." (R. 222.) He diagnosed her with muscle strain in the cervical spine, status post left wrist surgery, left bicipital tendonitis, left shoulder impingement syndrome, hypertension, hypothyroidism, history of asthma, and "functional illiteracy in regards to the English language" and opined that, notwithstanding these diagnoses, she had no physical or mental impairments. (R. 223.)

Dr. Field's consultative report does not reveal whether Dr. Field conducted any formal literacy screening during his examination of Plaintiff. However, the VA expressly did so in April 2008. In response to questioning from a registered nurse, Plaintiff advised that she has someone help her read hospital materials "sometimes." When asked, "How confident are you filling out medical forms by yourself?" Plaintiff responded, "a little bit." She further advised that she "often" has problems understanding the written materials about her medical condition. Nonetheless, she reported that she never has a problem

---

[24] (*See, e.g.*, R. 449-53.)

understanding what is told to her about her medical condition. The VA concluded that Plaintiff's "health literacy" was "marginal." (R. 434.)

Plaintiff appeared (and fully participated in) her administrative hearing before an ALJ on May 23, 2008, without the aid of an interpreter. The entire hearing was conducted in English. In response to questioning from both the ALJ and her attorney, Plaintiff provided appropriate and responsive testimony (in English). Plaintiff testified that she completed high school in Viet Nam and that she learned how to speak English by watching children's television programs such as Sesame Street. (R. 582.)

## IV. **DISCUSSION**

Plaintiff challenges the ALJ's application of the grids at step five of the sequential analysis arguing that the ALJ's erroneous assessment of Plaintiff's education led to the improper application of Rule 202.13 instead of Rule 202.09. There is no dispute that Plaintiff is limited exertionally to light work, is closely approaching advanced age, and is unable to return to any of her past relevant work. The sole issue raised is whether the ALJ properly evaluated Plaintiff's education and language abilities when determining Plaintiff's vocational profile.

Given the vocational and exertional characteristics that are not in dispute, the only variable is Plaintiff's capacity to communicate in the English language. Under Rule 202.09, if the claimant is *illiterate or unable to communicate in English*, she is disabled.[25] Under any other Rule within the grids for "light work," the grids direct a finding of "not

---

[25] "Age: closely approaching advanced age; Education: illiterate or unable to communicate in English; Previous Work Experience: unskilled or none; Decision: disabled." 20 C.F.R. Part 404, Subpt. P, App. 2, T.2.

10

disabled."[26] Thus, the relevant inquiry is whether the ALJ's conclusion that Plaintiff "is able to communicate in English" is supported by substantial evidence.[27]

Literacy is a component of the education category under the grids and as such the Commissioner bears the burden of proof on the matter.[28] Plaintiff's educational achievement in another language is irrelevant for purposes of evaluating literacy. "Literacy," under the SSA's own policies, means the ability to read and write in the English language—irrespective of fluency in any other language.[29]

In support of her argument that she is unable to communicate in English, Plaintiff points to her testimony that she received her formal education in Viet Nam and learned to speak English by watching children's television programs. Plaintiff also points to the report of a consultative examining physician, Dr. Lawrence Field, in which the physician noted in his report that Plaintiff reported she is able to understand 20% of the English language and opined that Plaintiff was functionally illiterate in the English language. In response, the Commissioner argues that there is substantial evidence to support the ALJ's determination that Plaintiff was "literate" within the meaning of the Social Security Administration's regulations.

---

[26] 20 C.F.R. Part 404, Subpt. P, App. 2, T.2, R. 202.10 - 202.15.

[27] Although the ALJ concluded that Plaintiff has a "high school education" – the evidence is clear that Plaintiff obtained this education in a foreign country. Accordingly, it is Plaintiff's ability to communicate in English that is determinative. 20 C.F.R. § 404.1564(b)(5).

[28] 20 C.F.R. § 404.1560(c)(2); *see also* Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996).

[29] Office of Hearings & Appeals, Social Security Administration, HEARINGS, APPEALS & LITIGATION LAW MANUAL (HALLEX) § I-5-3-12, available at 1993 WL 13011397.

As a threshold matter, the fact that Plaintiff obtained her formal education in a foreign country is only helpful to Plaintiff's argument to the extent that it serves as evidence to rebut the presumption of literacy that usually attaches when there is evidence that a claimant has completed a higher level of education such as high school.[30] Plaintiff suggests she is not capable of communicating in English. However, whether Plaintiff can or cannot speak English is only part of the equation. The Commissioner's obligation at step five of the sequential analysis is to evaluate Plaintiff's education which includes the ability to read and write the English language and not just the ability to speak English.

Dr. Field's statement concerning Plaintiff's literacy is not entitled to the deference normally accorded opinions from acceptable medical sources because a claimant's inability to read and write does not constitute a medical impairment.[31] Literacy is a factual issue concerning Plaintiff's vocational profile – the resolution of which is reserved to the Commissioner.[32] Although Dr. Field's impression includes the statement "functional illiteracy" in the English language, his consultative report does not document whether he conducted any literacy screening or educational testing as part of his examination. Indeed, Dr. Field's only reference to Plaintiff's ability to communicate in English is included within his summary of her social history – presumably based on the information provided to him by Plaintiff and not on any independent evaluation or

---

[30] 20 C.F.R. § 404.1564(b).

[31] 20 C.F.R. § 404.1527(e)(2); *see also* <u>Wolfe v. Chater</u>, 86 F.3d 1072 (11th Cir. 1996) (noting that illiteracy is a vocational factor and not a non-exertional impairment).

[32] <u>Id.</u>

12

testing. As such, Dr. Field's statement is of marginal relevance since it is unsupported by any objective clinical findings, testing or evaluation.

In stark contrast to Dr. Field's statement concerning Plaintiff's illiteracy there is more than substantial evidence supporting the ALJ's conclusion that Plaintiff was capable of communicating in English. For example, as part of her correspondence with the Social Security Administration, Plaintiff wrote a note (in English) describing her medical condition. (R. 111.) On at least one occasion, Plaintiff completed and signed a questionnaire (in English) concerning her past medical history. (R. 159.) Even more notably, Plaintiff's medical providers at the VA repeatedly noted that Plaintiff was capable of learning (in English) without any "barriers." Moreover, while not determinative of the issue, Plaintiff appeared at the administrative hearing (conducted in English) and offered coherent and responsive testimony without any assistance from an interpreter.

Most telling, however, is the fact that in Plaintiff's application for social security benefits she expressly acknowledged that she is capable of understanding, speaking, reading, and writing English without the assistance of an interpreter. (R. 73-74.) The ALJ was fully entitled to rely on this evidence and Plaintiff's own statement that she could understand, read and write the English language in assessing Plaintiff's education. Accordingly, for these reasons, the Court concludes that the ALJ's assessment of Plaintiff's education is supported by substantial evidence and, therefore, the ALJ's direct application of Rule 202.13 from the grids at step five of the sequential analysis does not constitute reversible error.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 24, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel